# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CR-09-146-D |
| | ) | |
| MELVIN BROWN CHILDS, III, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Before the Court are motions to quash filed by non-parties Verdia Ezell-Childs [Doc. No. 98] and Yvonne Washington [Doc. Nos. 105, 106]. The United States has responded to the motions [Doc. Nos. 100, 107] and Ms. Childs has replied [Doc. No. 104]. The matter is fully briefed and at issue.

## BACKGROUND

On May 21, 2009, Defendant Melvin Childs pled guilty to both counts of a two-count Information charging him with wire fraud under 18 U.S.C. § 1343 and money laundering under 18 U.S.C. § 1957(a). He was sentenced to probation for a term of five years as to each count, to be served concurrently, and ordered to pay restitution in the amount of $357,963.89. On January 7, 2014, Childs' probation was revoked and he was sentenced to six (6) months' incarceration followed by two years' supervised release for, among other things, submitting three checks to the Court Clerk's office that were returned for insufficient funds. *See* Order, Jan. 7, 2014

[Doc. No. 49]. The checks were drawn on an account in the name of Touch 1 Media LLC ("Touch 1") and signed by Yvonne Washington. *Id*. at 3. Based on testimony received at the revocation hearing, the Court found that Childs asked Touch 1 to issue the checks on his behalf. *Id*. at 4. Childs completed his supervised release in August 2016.

The present discovery dispute stems from the government's continuing efforts to collect restitution. After his discharge from supervised release, the government served Childs with written discovery requests, seeking information about, *inter alia*, his employment, income stream, and relationship with Touch 1, Ms. Washington, and Produced by Faith LLC (PBF).[1] In his responses, Childs stated he had no income, was employed at PBF as an unpaid production consultant, and identified Ms. Washington/PBF as having knowledge of financial information related to the *Love Jones* musical. After several unsuccessful attempts to obtain information from Ms. Washington, the government filed notices of subpoenas duces tecum indicating its intent to serve subpoenas on Touch 1 and PBF. The subpoenas, which are similar in their subject matter and scope, generally seek information related to each company's formation, their financial statements, Childs' employment, and their respective financial relationship with Childs.

---

[1] Ms. Washington is owner and registered agent of PBF. As reflected in the record, PBF is the producer of a stage play entitled *Love Jones – the Musical* in which the government contends Childs may possess a financial interest.

Ms. Washington, in her capacity as registered agent for Touch 1 and PBF, objects to the subpoenas and has moved the Court for an order quashing the subpoenas on the grounds they are overly broad and create an undue burden and expense. Alternatively, Ms. Washington asks that the subpoenas be substantially modified in certain respects.

In its efforts to collect restitution, the government also learned that Childs drove a 2014 Maserati Ghibli and he and Ms. Washington purchased the vehicle in Georgia. Further inquiry revealed that Childs, in his capacity as "owner or legal agent" of PBF, registered the vehicle. After Childs failed to respond to written discovery requests relating to said purchase/registration, the government filed a notice of subpoena duces tecum indicating its intent to serve a subpoena on the Municipal Employees Credit Union (MECU). The subpoena requested MECU to produce:

> Copies of loan applications and/or agreements for any and all accounts, purchases or sales, in the name of or related to **MELVIN BROWN CHILDS, III** …. Items should include, but not be limited to:
> a.     Melvin Brown Childs, III;
> b.     MECU loan account **[REDACTED]**; and
> c.     Auto loan for a Maserati Ghibli[.]
> Include copies of loan applications, monthly billing statements, repayment records disclosing the dates, amounts and method of repayment, and checks used to make repayments (front and back), and any memoranda or correspondence from the time of purchase to the present (Emphasis in original).

As discussed more fully below, Verdia Ezell-Childs is Childs' ex-wife. She moves the Court to quash the MECU subpoena on the grounds that it: (1) seeks irrelevant information, and (2) was issued for purposes of harassment.

## STANDARD OF DECISION

"The imposition of a restitution order results in a lien in favor of the government on all of the Defendant's property, and rights to property." *United States v. Thomas*, 165 F. Supp. 3d 992, 995 (D. Colo. 2015) (citing 18 U.S.C. §§ 3613(c), (f)). As a result, "the government has an interest in all of the Defendant's property for purposes of enforcing the restitution order and collecting the unpaid debt." *See id*. To this end, the Mandatory Victim Restitution Act of 1996 (MVRA) authorizes the government to enforce an order of restitution in accordance with "the practices and procedures for the enforcement of a civil judgment under Federal law or State law." *See* 18 U.S.C. §§ 3613(a), (f); *United States v. Witham*, 648 F.3d 40, 47-48 (1st Cir. 2011); *Thomas*, 165 F. Supp. 3d at 995. "Thus, the issuance of a civil subpoena under Fed. R. Civ. P. 45 by the government is an appropriate means of seeking information related to the enforcement of the restitution order." *See id*.

Under the Federal Debt Collection Procedures Act (FDCPA), the government may have discovery regarding the defendant's financial condition in the same manner in which discovery is authorized under the Federal Rules of Civil Procedure in an action on a claim for a debt. *Thomas*, 165 F. Supp. 3d at 995 (citing 28 U.S.C.

§ 3015). "In turn, Fed. R. Civ. P. 69 permits discovery in aid of execution of a judgment 'from any person —including the judgment debtor—as provided in these rules ...,' and Fed. R. Civ. P. 26 permits discovery relevant to any claim or defense." *Thomas*, 165 F. Supp. 3d at 995.

Accordingly, considerations of both relevance and proportionality govern the subpoenas at issue. Pursuant to Rule 45, "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). Rule 45(d)(3) permits the Court to either quash or modify a subpoena that, *inter alia*, requires disclosure of privileged or other protected matter, if no exception or waiver applies, or subjects a person to undue burden. Fed. R. Civ. P. 45(d)(1); *see also* Fed. R. Civ. P. 26(c)(1) (allowing a court to issue, for "good cause," a protective order regarding discovery "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.").[2]

In addition, Rule 26(b)(1), Federal Rules of Civil Procedure, provides:

> [T]he scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the

---

[2] The "good cause" standard is "highly flexible, having been designed to accommodate all relevant interests as they arise." *Rohrbough v. Harris*, 549 F.3d 1313, 1321 (10th Cir. 2008) (quoting *United States v. Microsoft Corp.*, 165 F.3d 952, 959 (D.C. Cir. 1999)).

parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ.P. 26(b)(1). Under this standard, "relevance" is broadly defined to include "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *United States ex rel. Shamesh v. CA, Inc.*, 314 F.R.D. 1, 8 (D.D.C. 2016) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

"A party seeking to quash a subpoena duces tecum has a particularly heavy burden as contrasted to a party seeking only limited protection." *In re Coordinated Pretrial Proceedings in Petroleum Prod. Antitrust Litig.*, 669 F.2d 620, 623 (10th Cir. 1982) (citations omitted); *S.E.C. v. Goldstone*, 301 F.R.D. 593, 646 (D.N.M. 2014) (noting the party moving to quash a subpoena has the burden to demonstrate good cause and/or a privilege to be protected). The objecting party must submit "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n. 16 (1981) (internal quotation marks and citations omitted).[3] "This typically means that the party seeking a protective order based on undue burden or expense must submit

---

[3] Although *Gulf Oil* and the following line of cases dealt with a showing of good cause for a protective order under Rule 26, the Court discerns no meaningful distinction between this standard and a party's "heavy burden" in seeking to quash a subpoena issued under Rule 45.

affidavits or other detailed explanation as to the nature and extent of the claimed burden or expense." *Aikens v. Deluxe Fin. Servs., Inc.*, 217 F.R.D. 533, 537 (D. Kan. 2003) (citations omitted). "When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under [Rule 26] or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Beach v. City of Olathe, Kan.*, 203 F.R.D. 489, 496 (D. Kan. 2001).[4]

---

[4] Ms. Washington and Ms. Ezell-Childs appear in this matter pro se. The Court, accordingly, construes their motions liberally and holds them to a less stringent standard than those drafted by attorneys. *Kikumura v. Hood*, 467 F.3d 1257, 1258 (10th Cir. 2006). It, however, does not "take on the responsibility of serving as [their] attorney in constructing arguments and searching the record." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). Further, neither party's pro se status excuses her from the obligation to comply with the governing rules of procedure, including local rules. *See id.* To this end, neither motion contains the certification required under Local Rule 37.1 that states the movants met and conferred in good faith with all other affected parties in an effort to resolve the dispute without court action. Nonetheless, given the manifest nature of the parties' dispute surrounding Defendant's financial status, as discussed at the recent status conference, the Court will excuse this requirement.

# DISCUSSION

## I.    MECU

In her motion, Ms. Ezell-Childs argues the subpoena should be quashed because (1) she is a joint holder of the subject account and the subpoena intrudes upon her privacy rights; (2) the subject account is closed and any discovery would be moot and irrelevant to the present case; and (3) she alone purchased the Maserati and disclosure of the transaction would result in "undue burden and unnecessary embarrassment." Mot. at 2.[5]

This motion is denied. As an initial matter, Ms. Ezell-Childs does have standing to object to the subpoena. A party has standing to move to quash a subpoena addressed to another if the subpoena infringes upon the movant's legitimate interests. *Goldstone*, 301 F.R.D. at 646. Here, the subpoena seeks bank records consisting of loan applications and agreements for *any and all accounts*, purchases or sales, in the name of *or related to* Defendant. As evidenced in her motion, this request conceivably encompasses joint accounts Ms. Ezell-Childs shared with Defendant. This Court has previously observed that courts recognize a privacy right sufficient to confer standing where a subpoena seeks a party's banking records. *See*

---

[5] This last contention appears to be at odds with PBF's statement that *it* had purchased the vehicle for business purposes. *See* PBF's Mot. at 8, ¶ 6 ("[PBF's] original purchase of a 2014 Maserati Ghibli on or before August 12, 2016 was for the sole benefit of [PBF] in connection with its business and not the Defendant.").

*Public Service Co. of Okla. v. A Plus, Inc.*, No. CIV-10-651-D, 2011 WL 691204, at
*3 (W.D. Okla. Feb. 16, 2011) ("[C]ourts have held that individuals whose banking
records are subpoenaed 'have a privacy interest in their personal financial affairs that
gives them standing to move to quash a subpoena served on a non-party financial
institution.'") (citations omitted).

Nevertheless, even assuming the subpoena seeks accounts in which Ms. Ezell-
Childs holds an interest, this interest alone is insufficient to warrant granting the
requested relief. As noted above, the imposition of a restitution order gives the
government an interest in all of the Defendant's property for purposes of enforcing
the restitution order and collecting the unpaid debt. Here, the government's interest
in seeking the account information is to determine the extent of any income,
monetary gains or other pecuniary interests Defendant has to satisfy the debt, as well
his use of such funds. Although Ms. Ezell-Childs is not a party to this case, the Court
finds that the disclosure of information related to bank accounts held by Defendant—
whether in his name or jointly with her—are relevant to the government's inquiry
into Defendant's financial condition for purposes of enforcing the restitution order.
*See Thomas*, 165 F. Supp. 3d at 995. Having found the subject information is
relevant and discoverable, the Court finds Ms. Ezell-Child's argument that the
subject subpoenas were issued for purposes of harassment is without merit, and her
motion on this issue is denied as well.

## II.    Touch 1 Media[6]

Touch 1 moves to quash the subpoena because: (1) Defendant was not an officer of Touch 1; (2) Touch 1 is defunct; (3) Touch 1 does not currently owe Defendant any compensation; (4) the requested documents do not exist; and (5) the subpoena is overly broad. Touch 1 requests that the subpoena either be quashed or "modified to only compel the production of books and papers currently in existence that solely relate to Defendant, if at all and solely in conjunction with the manner of business [Touch 1] once engaged in." Mot. at 3.

Pursuant to the Court's foregoing discussion regarding the relevance of Defendant's finances or financial rights, which is adopted and incorporated here, the Court finds Touch 1's motion should be granted in part and denied in part. The government's subpoena repeatedly used such blanket terms as "all documents," "all documents relating to," or "all documents pertaining to" without any reference to scope or time. Courts in this circuit have noted a discovery request may be overly broad on its face when it uses the terms "regarding," "relating to," or "pertaining to" with respect to a broad category of documents. *Aikens v. Deluxe Fin. Servs., Inc.*, 217 F.R.D. 533, 538 (D. Kan. 2003) (citing cases). Stated *supra*, Rule 45 creates an obligation for an attorney to take reasonable steps to avoid imposing undue burden

---

[6] The government agrees that Ms. Washington has standing to object to the subpoenas on behalf of Touch 1 and PBF. *See* Gov't Resp. at 11 [Doc. No. 107].

or expense on a person subject to the subpoena. The rule also allows the Court to modify a subpoena where it subjects a person to undue burden. Here, at this stage of the proceedings and due to the nature of the evidence sought, the Court finds the government's request that Touch 1 produce "all documents," "all documents relating to," or "all documents pertaining to" business/financial information regarding Defendant to be overly broad, and the subpoena is modified to omit those terms and similar phrases from Request Nos. 1-5 and 7-17. These requests are thus deemed to pertain only to the specific enumerated examples of information sought as set forth in the requests. In addition, the Court finds Request No. 18, which seeks production of "[a]ll documents pertaining to agreements with, or payments to, Fox Rothschild LLP on behalf of or for the benefit of [Defendant]" is objectionable as it necessarily implicates documents that may be subject to the attorney-client privilege. *See* Fed. R. Civ. P. 45(3)(A)(iii) (requiring court to quash or modify subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies[.]"). Moreover, Request Nos. 13-17 should be modified to seek documents for the period of January 1, 2014 through December 31, 2017.

Despite the foregoing modifications, the Court finds the subpoena is enforceable in all other respects. Touch 1 acknowledges it had a previous financial relationship with Defendant. *See id.* ("Touch 1 Media's records are complete irrelevant … as it no  longer [has] any compensation agreements in place with

Defendant as the company is defunct."). Moreover, Touch 1's alternative request that the subpoena be modified arguably acknowledges it may possess responsive documents. Obviously, Touch 1 cannot be compelled produce documents that do not exist, as Rule 45 allows a party responding to a subpoena to produce documents as they are kept in the ordinary course of business. Fed. R. Civ. P. 45(e)(1)(A). "Thus, if a requested document is not in the possession of a party or non-party, such person need not create the non-existent document." *Georgacarakos v. Wiley*, No. 07-cv-1712, 2009 WL 924434, at *2 (D. Colo. Apr. 3, 2009) (citations omitted); *see also Insituform Techs., Inc. v. Cat Contracting, Inc*., 168 F.R.D. 630, 633 (N.D. Ill. 1996) (Rule 45 "does not contemplate that a non-party will be forced to create documents that do not exist").

The Court recognizes that compliance with a subpoena will inevitably involve some measure of burden to the subpoenaed non-party, but the Court will not deny a party access to relevant discovery merely because compliance inconveniences a non-party or subjects it to some expense. In this regard, Touch 1 has not offered, to the Court's satisfaction, any detailed explanation demonstrating that it will suffer undue burden and expense by complying (or attempting to comply) with the subpoena as modified. Accordingly, its motion is denied in this regard.

## III.    Produced by Faith

As noted, the government's subpoena to PBF is virtually identical to the one issued to Touch 1. PBF, likewise, moves to quash the subpoena on the following grounds: (1) the subpoena constitutes a "broad fishing expedition"; (2) any compliance will create an undue burden and expense; (3) the subpoena seeks irrelevant information; (4) compliance would cause PBF to breach other agreements, thereby subjecting it to litigation; (5) PBF does not owe Defendant any compensation; (6) the subpoena seeks documents that do not exist; and (7) the subpoena is overly broad.

For the reasons stated above, the Court finds PBF's motion should be granted in part and denied in part. The government's request that PBF produce "all documents," "all documents relating to," or "all documents pertaining to" business/financial information regarding Defendant, without reference to scope or time, is overly broad, and the subpoena is modified to omit those terms and similar phrases from Request Nos. 1-5 and 7-18, with the same qualifications set forth regarding the Touch 1 subpoena. Moreover, the Court finds Request No. 19 is objectionable as it necessarily implicates documents that may be subject to the attorney client privilege. Lastly, Request Nos. 14-18 should be modified to seek documents for the period of January 1, 2014 through December 31, 2017.

In all other respects, the Court finds the subpoena should be enforced. The requested information is relevant to the government's enforcement of the restitution order. Other than its blanket assertions, PBF has not specifically demonstrated how compliance with the subpoena will either create an undue burden or subject it to civil liability. Accordingly, its motion is denied in this regard.

## CONCLUSION

Verdia Ezell-Childs's Motion to Quash [Doc. No. 98] is **DENIED**. Yvonne Washington's Motions to Quash [Doc. Nos. 105, 106] are **GRANTED IN PART** and **DENIED IN PART** as set forth herein.

**IT IS SO ORDERED** this 7th day of February 2018.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE